UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MONTRELLE MITCHELL AND                              CIVIL ACTION
STEVEN A. FENNIDY

v.                                                  NO. 07-510

EUREKA CHEMICAL, ET AL.                             SECTION "F"

ORDER AND REASONS

Before the Court is the defendant's Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

BACKGROUND

On January 4, 2006, while he was unloading a FedEx delivery truck at Eureka Chemical Company, Steven Fennidy's right side was impaled on a forklift blade after he leaped from the back of the truck he was unloading to avoid being struck by falling pallets. He suffered, among other injuries, a massive hematoma that required surgery, and he continues to experience pain.

Only two witnesses exist: Fennidy and the forklift operator, Ashton Chargois. No one else.

Fennidy was delivering a load of empty pallets at Eureka's warehouse. According to Fennidy, there was no loading dock at Eureka's facility, so he backed the truck up to the doors. After Fennidy opened the doors, he stood to the side while Chargois used

1

the forklift to retrieve the first set of pallets from the truck. Chargois then transported the first set of pallets toward the back of the warehouse. Meanwhile, Fennidy got into the truck to use the pallet jack because the forklift blades were not long enough to reach the rest of the pallets. As he jacked the pallets up, the pallets - which were stacked seven feet high - began to fall. Fennidy lost his balance and he leaped from the truck to avoid the falling pallets.  Meanwhile, Chargois had set the first set of pallets at the back of the warehouse and had returned to the truck. Fennidy says he was not aware that the forklift was behind the truck and that the blades were raised. When he jumped from the truck, Fennidy hit the raised forklift blades and was seriously spiked.

Fennidy concedes, as he must, that he has no personal knowledge as to whether the forklift was moving at the time of the incident.  Chargois claims that the forklift had not been moving for at least a couple of minutes before the unfortunate incident.

According to Chargois, Chargois took the first set of pallets from the tractor-trailer to the back of the warehouse, then he drove the forklift back to the truck, keeping the forklift tines down until he was in position behind the truck to take the next load. He positioned the forklift slightly to the right and approximately three feet behind the truck, then  raised the tines level with the back of the trailer.  Because of the forklift's

2

noise, there was no conversation between Chargois and Fennidy. The forklift remained in position to receive the next load of pallets for two to three minutes.  Meanwhile, as Fennidy was positioning the pallets for the next load, the pallets began to fall. He jumped out of the back of the truck without looking behind him.

On December 6, 2006, Fennidy and his wife sued Eureka Chemical and its insurer.  On January 26, 2007, Eureka removed the suit to this Court, invoking the Court's diversity jurisdiction.  On March 13, 2007, finding that the plaintiffs had met their notice pleading burden, the Court denied Eureka's motion to dismiss the plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or for alternative relief under Rule 12.

Eureka now moves for summary judgment, claiming it was not the legal cause of the accident.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury

could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

II.

Eureka contends it is not liable for negligence because it was

not the legal cause of the plaintiff's injury.[1] To determine liability under La.C.C. art. 2315, Louisiana employs the duty-risk analysis, which consists of four inquiries:(1) was the defendant's conduct the cause-in-fact of the resulting harm; (2) did the defendant owe a duty to the plaintiff; (3) was that duty breached; and (4) was the resulting harm within the "scope of protection" of the duty breached. Mathieu v. Imperial Toy Corp., 646 So.2d 318, 321-22 (La. 1994).

   The scope of protection - or legal cause - inquiry asks whether the defendant's duty "extends to or is intended to protect this plaintiff from this type of harm arising in this manner." Bellsouth Telecommunications, Inc. v. Eustis Engineering Co., Inc., 974 So.2d 749, 751-52. It is ultimately a question of policy: if the circumstances of that injury to that plaintiff could not be reasonably foreseen, the risk is not within the scope of duty. FDIC v. Barton, 233 F.3d 859, 863 (5th Cir. 2000). Whether the defendant is liable for his substandard conduct depends on "how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced." South Cent., Bell Tel. Co. v. Sewerage and Water Board of New Orleans, 652 So.2d 1090, 1093-94 (La.App. 4 Cir. 1995).

---

[1] Specifically, Eureka contends, "The risk of injury as a result of falling/leaping out of a trailer without looking, during the unloading process, is not within the scope of protection of any duty owed by Eureka to the Plaintiff."

III.

Summary judgment is appropriate where, as here, there are no disputed issues of material fact in the parties' accounts of the events leading to Fennidy's injuries. Both agree that Fennidy was in the process of realigning the pallets; the pallets began to fall; Fennidy jumped from the truck to avoid the falling pallets; Fennidy did not look behind him before jumping. It is also uncontroverted that the forklift was stationary with its tines raised at the time of the accident.

The plaintiff nevertheless insists that the manner in which Chargois operated the forklift breached the duty of reasonable care. The record betrays the weakness of plaintiff's point.

Forklift operators are held to a reasonable operating standard. See, e.g., Morris v. Owens-Illinois, Inc., 582 So.2d 1349, 1353-54 (La. App. 2nd Cir. 1991)(reasoning that defendant's duty was to "operate the forklift in a reasonably safe manner, in accord with reasonable safety standards, to protect against risks which could reasonably be foreseen"). Fennidy submits that, according to FedEx's training process, forklift operators are required to keep the tines lowered until receiving a signal to proceed from the person in the truck.[2] Thus, plaintiff concludes

---

[2] Fennidy described FedEx's training process as follows: "They teach you to always keep your blades to the ground until the freight is positioned for – say, for instance, you to get the freight off the truck with the forklift. So once I'm in the clear, you bring your blades up, get your pallet, take it down. That way

III.

Summary judgment is appropriate where, as here, there are no disputed issues of material fact in the parties' accounts of the events leading to Fennidy's injuries. Both agree that Fennidy was in the process of realigning the pallets; the pallets began to fall; Fennidy jumped from the truck to avoid the falling pallets; Fennidy did not look behind him before jumping. It is also uncontroverted that the forklift was stationary with its tines raised at the time of the accident.

The plaintiff nevertheless insists that the manner in which Chargois operated the forklift breached the duty of reasonable care. The record betrays the weakness of plaintiff's point.

Forklift operators are held to a reasonable operating standard. See, e.g., Morris v. Owens-Illinois, Inc., 582 So.2d 1349, 1353-54 (La. App. 2nd Cir. 1991)(reasoning that defendant's duty was to "operate the forklift in a reasonably safe manner, in accord with reasonable safety standards, to protect against risks which could reasonably be foreseen"). Fennidy submits that, according to FedEx's training process, forklift operators are required to keep the tines lowered until receiving a signal to proceed from the person in the truck.[2] Thus, plaintiff concludes

---

[2] Fennidy described FedEx's training process as follows: "They teach you to always keep your blades to the ground until the freight is positioned for – say, for instance, you to get the freight off the truck with the forklift. So once I'm in the clear, you bring your blades up, get your pallet, take it down. That way

that Chargois's decision to raise the tines before receiving a signal from Fennidy was unreasonable. However, the plaintiff provides no support for his position that FedEx's particular forklift operation policy is determinative of the industry standard, and the plaintiff supplies no evidence to establish that Chargois operated the forklift unreasonably as a matter of law.

Plaintiff also contends that Eureka violated OSHA training requirements in failing to properly train Chargois.[3] However, even assuming Eureka's violation of the OSHA requirements, plaintiff has not proven that any such violation caused Fennidy's injury. "To establish that a defendant's violation of a statute or regulation is negligence per se, a plaintiff must prove 'th(e) violation of a statute which is intended to protect the class of persons to which the plaintiff belongs against the risk of the type of harm which has in fact occurred.'" Melerine v. Avondale Shipyards, Inc., 659 F.2d 706, 709-10 (5th Cir. 1981) (citing Marshall v. Isthmian Lines, Inc., 334 F.2d 131, 134 (5th Cir. 1964). Thus, for liability to attach, the OSHA violation must be the legal cause of the accident. Weber v. Phoenix Assur. Co. of New York, 273 So.2d 30, 33

---

I can see everything you are doing."

[3] OSHA specifically requires employers to implement a training program, consisting of formal instruction, practical training, and evaluation and requires employers to certify that each operator has been so trained and evaluated. 29 CFR 1910.178. Chargois testified that he read a forklift operator's manual and learned how to operate the forklift's controls from a fellow employee.

(La.1973).[4]

To satisfy the legal cause requirement, the plaintiff must establish that there was a substantial relationship between Eureka's conduct and Fennidy's injury. Fowler v. State Farm Fire & Cas. Ins. Co., 485 So.2d 168, 170 (La.App. 2 Cir. 1986). In Fowler, the court determined that the defendant was not the legal cause of plaintiff's decision to jump from a balcony, even though defendant's actions led to plaintiff being trapped on the balcony. Id. Rather, the court found that "the cause of the plaintiff's injuries was his decision to jump and...his error in judgment as to the feasibility of safely landing on the ground." Id. Similarly, Fennidy instinctively reacted to the falling pallets by jumping from the truck without looking behind him. (It is uncontested that Eureka did nothing to make the pallets fall.) Fennidy fails to furnish that needed evidentiary link between Eureka's operation of the forklift and Fennidy's intuitive jump to avoid falling pallets. The relationship between Eureka's conduct in operating the forklift and Fennidy falling on the forklift tine can hardly be deemed substantial as a matter of law.

Fennidy also vaguely asserts that Eureka breached the duty of reasonable care, but the cases he invokes are not helpful to his

---

[4] It should also be noted that OSHA merely prescribes the methods and topics required for training forklift operators. The statute does not provide the industry standard for properly unloading a truck with a forklift, and does not specify the proper moment to raise the forklift's tines.

cause. The cases he cites involve injuries resulting from the plaintiff being struck by a moving forklift (See Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La. App. 2nd Cir. 1990; See also Bryant v. Hartford Acc. & Indem. Co., 158 So.2d 263 (La. App. 4th Cir. 1963)). Here, the plaintiff jumped into the forklift; the forklift was stationary. The record is silent about any indication that this type of harm was reasonably foreseeable.

Eureka draws the Court's attention to the point that jumping from the back of a tractor-trailer during the unloading process was an open and obvious risk, of which Fennidy, as an experienced FedEx employee, should have been aware. In Graubarth v. United States, another Section of this Court granted a defendant's motion for summary judgment where the plaintiff supplied no evidence to challenge the defendant's allegations that the danger was "open and obvious" and the "risk presented to the plaintiff was reasonable." 2005 WL 3543763 at *4 (E.D. La. 2005). Given the plaintiff's failure to substantively challenge Eureka's assertions that -- not only was it not the legal cause of the injury -- but indeed that it also owed no duty to warn Fennidy of the dangers of jumping from his truck, summary judgment is appropriate.

Plaintiff has not established that Eureka had a duty to ensure that Fennidy would not impulsively jump backward out of the truck without looking where he was jumping to avoid falling pallets, or that any conduct on Eureka's part contributed to Fennidy's

injuries.

Accordingly, Eureka's motion for summary judgment is GRANTED.

New Orleans, Louisiana, June 25, 2008.

```
                     _____
                            MARTIN L. C. FELDMAN
                         UNITED STATES DISTRICT JUDGE
```